UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| POLICE & FIRE DEPARTMENT SYSTEM OF THE CITY OF DETROIT,<br><br>    Plaintiff,<br><br>    v.<br><br>ORCHARD PARK, LLC, et al.,<br><br>    Defendants.<br>_____/ | No. C 08-5316 PJH<br><br>**ORDER APPOINTING RECEIVER AND GRANTING PRELIMINARY INJUNCTION** |

Before the court is plaintiff Police & Fire Department System of the City of Detroit's ("plaintiff") motion for appointment of a receiver and for preliminary injunction, which defendants Orchard Park, LLC ("Orchard Park"), Crystal Terrace Retirement Community, LLC ("Crystal Terrace"), Sanddollar Village Assisted Living, LLC ("Sanddollar"), Jon M. Harder ("Harder"), Darryl E. Fisher ("Fisher") and Capital Managers, LLC ("Capital Managers") (collectively "defendants") did not oppose. The court found this motion suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b), and therefore VACATED the hearing scheduled for February 18, 2009. Having carefully read the papers and considered the relevant legal authority, the court hereby GRANTS plaintiff's motion for appointment of a receiver and for preliminary injunction, for the reasons stated below.

## BACKGROUND

This action arises out of the default on loans secured by Orchard Park, Crystal Terrace and Sanddollar (collectively "borrowers"), assisted living facilities located in Lake County, California, Klamath County, Oregon and Beaufort County, South Carolina,

respectively (collectively "properties"). Compl. ¶¶ 1-2.[1] The loans are cross-defaulted and cross-collateralized. Id. ¶ 1. Defendants Harder and Fisher (collectively "guarantors") have guaranteed repayment of the loans. Id.

Plaintiff is a Michigan public employee retirement system. Compl. ¶ 4. On or about September 23, 2005, plaintiff, as successor to MMA Mortgage Investment Corporation and MMA Construction Finance, LLC made a $3,990,000 loan to Orchard Park, a $7,575,000 loan to Crystal Terrace and a $2,866,000 loan to Sanddollar. Id. ¶¶ 17, 25, 32. The loans are evidenced by Interim Mortgage Notes, dated September 23, 2005 ("Notes"). Id. The loans are secured by two deeds of trust and one mortgage, encumbering the properties by first priority liens. Id. ¶¶ 18, 26, 33. To secure repayment of the loans, the borrowers also executed and delivered to plaintiff an Assignment of Rents and Security Agreement and a Rent Escrow Agreement. Id.

The deeds of trust and mortgage provide that plaintiff is entitled to foreclose on the property in the event borrowers' default, and defines the events constituting default. Dawson Decl., Exhs. D-F. An "Event of Default" consists of, among other things, "any failure by Borrower to pay or deposit when due any amount required by the Note, this Instrument or any other Loan Document . . ." Id. The deeds of trust and mortgage also provide that upon an Event of Default, plaintiff is entitled to appointment of a receiver. Specifically, the deeds of trust and mortgage provide, in relevant part:

> [I]f an Event of Default has occurred and is continuing, regardless of the adequacy of Lender's security, without regard to Borrower's solvency and without the necessity of giving prior notice (oral or written) to Borrower, Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to [perform all acts that Lender in its discretion determines to be necessary or desirable for the operation and maintenance of the Mortgaged Property, including the execution, cancellation or modification of the Leases, the collection of all Rents, the making of repairs

---

[1] The deed of trust securing the loan made to Orchard Park encumbers an assisted living facility located at 14789 Burns Valley Road, Clearlake, California 95422. The deed of trust securing the loan made to Crystal Terrace encumbers an assisted living facility located at 1000 Town Center Drive, Klamath Falls, Oregon 97601. The mortgage securing the loan made to Sanddollar encumbers an assisted living facility located at 80 Main Street, Hilton Head Island, South Carolina 29926. Craig Dawson ("Dawson") Decl., Exhs. D-F. The court notes that the legal descriptions of these properties are set forth fully in Exhibits D-F, attached to the declaration of Dawson.

2

> to the Mortgaged Property and the execution or termination of contracts providing for the management, operation or maintenance of the Mortgaged Property, for the purpose of enforcing the assignment of Rents pursuant to Section 3(a), protecting the Mortgaged Property or the security of this Instrument, or for such other purposes as Lender in its discretion may deem necessary or desirable]. If Lender elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver *ex parte* if permitted by applicable law.

Id.

Commencing on June 1, 2008, or at the latest July 1, 2008, and continuing at all times thereafter, borrowers materially and repeatedly defaulted on their respective loans by failing to make monthly mortgage payments. Compl. ¶¶ 51, 53. Borrowers also refused to make payments on any of the late charges that have accrued from these delinquent payments. Id. ¶ 54. Borrowers, however, have continued to collect rents, issues and profits derived from the properties and have allegedly diverted these funds from the property to themselves in violation of the deeds of trust and mortgage. Id. ¶ 55; Dawson Decl., Exhs. D-F.

On July 9, 2008, plaintiff served borrowers and guarantors with Notices of Default, demanding "immediate payment in full of all principal, accrued and unpaid interest, and other fees due upon the Loan[s]." Compl. ¶¶ 56, 58; Dawson Decl., Exhs. J-L. In letters dated July 18, 2008, plaintiff informed borrowers that all rental income from the properties should be deposited into accounts controlled by plaintiff pursuant to the Rent Escrow Agreements, which provide, upon the occurrence of an Event of Default and upon request by plaintiff, borrowers are required to deposit all rental income into accounts designated by plaintiff and under plaintiff's control. Compl. ¶¶ 62-63; Dawson Decl., Exhs. G-I, M-O. To date, none of the defaults have been cured and borrowers continue to refuse to deposit any rents into accounts controlled by plaintiff or tender any payment pursuant to plaintiff's demands. Compl. ¶¶ 3, 61, 65. As a result, each of the loans has been accelerated and is accruing interest at a default rate, along with late charges, fees and costs of collection. Id. ¶ 3.

As of November 1, 2008, the following was due and owing on the respective loans: (1) $3,990,000 in unpaid principal, $186,782 in delinquent monthly payments and $6,251 in late charges, plus fees and costs, on the Orchard Park loan; (2) $7,412,568 in unpaid principal, $299,900 in delinquent monthly payments and $11,503 in late charges, plus fees and costs, on the Crystal Terrace loan; and (3) $2,741,715 in unpaid principal, $128,347 in delinquent monthly payments and $4,328 in late charges, plus fees and costs, on the Sanddollar loan.  Compl. ¶¶ 24, 31, 38.  In addition, plaintiff asserts that borrowers are delinquent in payments regarding vendor invoices for certain expenses incurred in the daily operation of the facilities.  Dawson Decl. ¶ 21, Exhs. P-R.  According to plaintiff, the outstanding balances for the respective properties are as follows: (1) $345,000 for Orchard Park; (2) $375,000 for Crystal Terrace; and (3) $207,000 for Sanddollar.  Dawson Decl. ¶¶ 22-24.

On November 20, 2008, plaintiff filed the instant action, alleging the following claims for relief: (1) judicial foreclosure; (2) specific performance regarding assignment of rents, appointment of receiver and injunctive relief; (3) breach of guaranty; and (4) accountings. Compl. ¶¶ 71-105.  Defendants did not file an answer or otherwise respond to the complaint. On January 12, 2009, plaintiff moved for an order appointing a receiver to take possession of, operate, manage and preserve the properties pursuant to Rule 65 and Rule 66 of the Federal Rules of Civil Procedure.  Plaintiff also seeks an order enjoining borrowers from further dwindling the rents and from interfering with the court-appointed receiver, and compelling borrowers to turn over to the receiver all the books and records pertaining to the properties and any other collateral securing the loans.

**DISCUSSION**

A.     Judicial Notice

"A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b).  "A court shall take judicial notice if requested by a party and supplied with the necessary information." Fed.R.Evid. 201(d).

4

Plaintiff requests that this court take judicial notice of the following documents: (1) Chapter 11 Voluntary Bankruptcy Petition filed by Sanddollar Court Memory Care, LLC on December 30, 2008 in the United States Bankruptcy Court, District of Oregon, Bankruptcy Petition No. 08-37157 and PACER Docket Report for 08-37157; and (2) Chapter 11 Voluntary Bankruptcy Petition filed by Jon M. Harder on December 31, 2008 in the United States Bankruptcy Court, District of Oregon, Bankruptcy Petition No. 08-37225 and PACER Docket Report for 08-37225.

Pursuant to Federal Rule of Evidence 201, the court takes judicial notice of these documents as they are matters of public record. See Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001) (a court may take judicial notice of matters of public record); Headwaters Inc. v. United States Forest Service, 399 F.3d 1047, 1051 n. 3 (9th Cir. 2005) (courts may take judicial notice of the docket in related cases as materials from a proceeding in another tribunal are appropriate for judicial notice).

B.   Legal Standard

The appointment of a receiver in a diversity case is governed by federal law and federal equitable principles. See New York Life Ins. Co. v. Watt West Inv. Corp., 755 F.Supp. 287, 290-92 (E.D. Cal. 1991).[2]  "Receivership is an equitable remedy and a receiver will be appointed when the most speedy and perfect administration of justice and the rights of the parties interested in the property will be best secured by such action." In View Crest Garden Apartments v. United States, 281 F.2d 844, 849 (9th Cir. 1960) (internal quotation marks omitted).  In determining the propriety of appointing a receiver, courts consider a number of factors.  Most important among the factors are the adequacy of the security and the financial position of the mortgagor. New York Life Ins., 755 F.Supp. at 292

---

[2] Rule 66 of the Federal Rules of Civil Procedure governing appointment of receivers, provides:

> These rules govern an action in which the appointment of a receiver is sought or a receiver sues or is sued.  But the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule.

Fed.R.Civ.P. 66.

1  (citing In View Crest Garden Apartments, 281 F.2d at 847 (holding that a receiver may be
2  appointed to collect rents, issues and profits during the pendency of a foreclosure action
3  when the district court is satisfied that the security is inadequate or its adequacy is
4  substantially doubtful and that the mortgagor is insolvent or of doubtful financial standing).
5  In appointing a receiver, courts also consider: (1) fraudulent conduct on defendant's part;
6  (2) imminent danger of the property being lost, concealed, injured, diminished in value, or
7  squandered; (3) inadequacy of legal remedies; (4) probability that harm to plaintiff by denial
8  of appointment would outweigh injury to parties opposing appointment; (5) plaintiff's
9  probable success in the action and the possibility of irreparable injury to plaintiff's interest in
10 the property; (6) whether plaintiff's interests sought to be protected will in fact be
11 well-served by receivership.  New York Life Ins., 755 F.Supp. at 292.

12 C.     Legal Analysis

13        After careful consideration of the foregoing factors, the court finds that the
14 appointment of a receiver is appropriate.  The uncontroverted evidence before the court
15 indicates that it is likely that the security is inadequate, or substantially doubtful, and that
16 the borrowers are of doubtful financial standing.  Plaintiff has offered evidence indicating
17 that the value of the properties is inadequate to repay the outstanding debt owing on the
18 loans, and that it is unlikely that the borrowers are currently able, or might soon become
19 able, to fully repay the amounts owed.  More specifically, plaintiff offered the declaration of
20 Dawson, asset Manager or MMA Construction Finance, LLC, the loan servicing agent for
21 plaintiff, attesting that appraisals conducted on the respective properties in late 2008
22 confirm that the value of the properties is less than the debt due and owing on the loans.
23 Dawson Decl. ¶ 25.  Further, given that default interest continues to accrue daily on the
24 balance due on the loans, plus other fees and costs due under the loan documents,
25 foreclosure alone is inadequate to repay the outstanding debt owed.   Plaintiff also offered
26 evidence indicating that one of the guarantors of the properties, Harder, recently filed for
27 bankruptcy,  Pl.'s Req. for Judicial Notice, Exh. B, as well as evidence indicating that
28 borrowers are delinquent in making mortgage payments and in paying operating expenses.
   Dawson Decl. ¶¶ 7-8, 21-24, Exhs. P-R.  Borrowers neither dispute the evidence offered by

plaintiff nor do they offer probative evidence to the contrary. In fact, borrowers have offered no assurance whatsoever that they are now and will remain fully able to repay the amounts owed or that the security is adequate to repay the outstanding debt owed.

In addition, the court finds there is imminent danger of the properties being diminished in value and the proceeds from the properties being lost. Although the record presently before the court does not support a conclusive finding that rents are currently being diverted from the repayment of plaintiff's loans, the court, for purposes of this motion, will assume as much given the evidence in the record and the fact that borrowers have failed to provide evidence disputing plaintiff's contention that monthly mortgage payments under the Orchard Park and Sanddollar Notes have not been made since June 2008, and that monthly mortgage payments under the Crystal Terrace Note have not been made since July 2008. Plaintiff has also offered evidence indicating that borrowers are delinquent in paying substantial debts incurred by daily operations, which may result in the termination of critical services to tenants. If the debts owed to vendors are not paid, it appears likely that tenants will be forced to find other living accommodations, thus diminishing the properties' value.

The court further finds that the balance of hardships and probability of success on the merits weighs heavily in plaintiff's favor. The deeds of trust and mortgage specifically provide for the appointment of a receiver under the circumstances, i.e., where an Event of Default has occurred. The court cannot envision, nor have the borrowers articulated, any hardship that would occur in enforcing the terms of the parties' bargain. On the other hand, it appears likely that plaintiff, and the tenants, will suffer significant hardship if the borrowers continue to divert rents and fail to pay outstanding expenses related to the daily operations of the facilities during the pendency of this case. Moreover, based on the evidence before the court, plaintiff's probability of success on the merits of the claims alleged in the complaint appears high. Finally, the court finds that the appointment of a receiver will serve plaintiff's interests insofar as the receiver will, among other things, manage the properties and collect rents during the pendency of this case, thereby preserving the rents and preventing the closure of the facilities.

In sum, the court finds that appointment of a receiver is a necessary remedy to protect the interests of plaintiff and outweighs any harm to borrowers. To the extent plaintiff requests injunctive relief that would prohibit borrowers from "interfering" with the receiver and require borrowers to turn over all rents, books, records and accounts relating to the properties, the court finds such relief appropriate. "A preliminary injunction is appropriate when a plaintiff demonstrates 'either: (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in [the plaintiff's] favor.' " Lands Council v. Martin, 479 F.3d 636, 639 (9th Cir. 2007). Alternatively, a preliminary injunction is appropriate when a plaintiff establishes " '(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases).' " Id. The court finds that these factors have been satisfied.

As noted above, the court finds that the balance of hardships and probability of success on the merits weighs heavily in plaintiff's favor. The evidence before the court demonstrates that plaintiff is likely to succeed on the merits of its claims seeking judgment on the amounts owed under the loan documents and for judicial foreclosure of the properties, and that there is a possibility that plaintiff will suffer irreparable harm if a receiver is not appointed to manage the properties and collect rents. Specifically, the evidence in the record indicates that borrowers have defaulted on their loans by failing to make monthly mortgage payments, and that, pursuant to the loan documents, upon the occurrence of an Event of Default, plaintiff is entitled to all rental income and to the appointment of a receiver to manage the properties and collect rents. The evidence further indicates that it is unlikely that borrowers are now able, or might soon become able, to fully repay the amounts owed on their loans. Moreover, there is an imminent danger of the properties being diminished in value and the proceeds from the properties being lost during the pendency of this litigation because the security is likely inadequate to satisfy the debt owed by borrowers, and because borrowers are delinquent in making mortgage payments and paying debts incurred by daily operations. Further, because default interest continues

to accrue daily on the balance due on the loans, plus other fees and costs due under the loan documents, foreclosure of the properties alone is not an adequate remedy to protect plaintiff's legal and equitable interests. In addition, the court finds that there is little likelihood of significant injury to borrowers from the issuance of a preliminary injunction. An order directing borrowers to refrain from interfering with the receiver simply makes explicit that which is implicit in the judicial act of appointment itself; namely, that the receiver possess and is entitled to exercise all powers, and perform all duties and responsibilities necessary to accomplish the tasks of the receivership without interference from borrowers or any other third party. Finally, the court finds that it is in the public interest to prevent interference with the receiver and to require borrowers to turn over certain documents to the receiver insofar as the receiver will, among other things, manage the properties to avoid the public harm that would occur if the properties were forced to shut down for failure to pay outstanding operating expenses.

To the extent that the real property at issue in this litigation is located outside the jurisdiction of this court, the court finds that a bond is appropriate. 28 U.S.C. § 754 (Receivers of property in different districts are vested with jurisdiction over the property "upon giving bond as required by the court.").[3] Whether to require a bond and the amount of the bond rests within the discretion of the court. SEC. v. Universal Fin., 760 F.2d 1034, 1039 (9th Cir. 1985). Based on the evidence submitted regarding the value of the properties, the court determines that a bond in the amount of $100,000 is necessary and

---

[3] 28 U.S.C. § 754 provides, in full:

A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with complete jurisdiction and control of all such property with the right to take possession thereof.

He shall have capacity to sue in any district without ancillary appointment, and may be sued with respect thereto as provided in section 959 of this title.

Such receiver shall, within ten days after the entry of his order of appointment, file copies of the complaint and such order of appointment in the district court for each district in which property is located. The failure to file such copies in any district shall divest the receiver of jurisdiction and control over all such property in that district.

reasonable to protect borrowers' interest in the properties during the pendency of this litigation.  See Fed.R.Civ.P. 65(c); Civil L.R. 66-1(e).

**CONCLUSION**

For the reasons stated above, the court GRANTS plaintiff's motion for appointment of a receiver and for preliminary injunction.  The court hereby appoints Grace Management, Inc. as the receiver of the properties commonly known as: (1) Orchard Park Assisted Living & Memory Care Community located at 14789 Burns Valley Road, Clearlake, California 95422; (2) Crystal Terrace Retirement Community located at 1000 Town Center Drive, Klamath Falls, Oregon 97601; and (3) Palm Meadows Village Assisted Living Community located at 80 Main Street, Hilton Head Island, South Carolina 29926.  Receiver shall assume its full duties and responsibilities after filing a receiver's oath and a receiver's bond in the amount of $100,000 pursuant to Civil Local Rule 66-1(e).  Receiver shall have seven (7) days from the entry of this Order in which to file a receiver's oath and obtain and file a suitable bond.  Upon receipt of such oath and bond, and upon compliance with 28 U.S.C. § 754, it is ORDERED that Grace Management, Inc. shall take possession of, manage and operate, collect rents (including past rents), issues and profits, and pay all ordinary and necessary operating expenses of the properties.  Receiver is authorized to take all measures necessary to manage, preserve, protect, maintain, repair, and safeguard the receivership properties.  Receiver may retain and employ such professionals as receiver deems necessary or beneficial to assist it in fulfilling and discharging its duties hereunder.

It is further ORDERED that borrowers shall cooperate with the receiver and its agents to enable receiver and its agents: (1) to take possession of the receivership properties, including the rents of the properties; (2) to conduct a review of the properties, including all lease or rental documents; and (3) to come to an understanding of the management of the receivership properties.  Borrowers shall also provide receiver with full and complete access to the receivership properties, including delivery to the receiver of all rents, lease or rental documents, books of accounts and other records and financial information relating to the properties at a time the receiver designates.  Borrowers, and all other persons in active concert or participation with them, shall not engage in any act that

would impede or hinder the receiver in the discharge of its duties and responsibilities hereunder.

It is further ORDERED that receiver has the right to compensation for its services. Receiver is entitled to charge for its services a monthly fee of six percent (6%) of the gross income collected, or $8,500, whichever is greater per property. Receiver is also entitled to an assumption fee of $7,500 per month for the first two months per property, for a total assumption fee of $15,000 per property. Receiver shall additionally be entitled to recover all of its reasonable expenses.

It is further ORDERED that receiver shall prepare and file in this court, within thirty days (30) after qualifying, a full and detailed inventory, under oath, of all property and all leases or rental agreements possessed under this Order. In addition, receiver shall maintain records of all income and expenses incurred in the administration of the receivership properties, including the receiver's fees and expenses, and shall file an accounting thereof with the court every other month, commencing on April 1, 2009, and in such manner as the court shall hereafter require. Receiver shall serve full and accurate copies of these reports, and any and all other documents it files with the court, upon all parties to this action.

It is further ORDERED that the enumeration of rights, duties and powers of the receiver set forth in this Order shall not be construed as a limitation upon it, nor shall it exclude in any manner its right to do such other acts not herein specifically enumerated, or otherwise provided for, as may be necessary or appropriate for the accomplishment of or in aid of the purpose of receivership.

It is further ORDERED that the receiver and the parties in this action may apply for enforcement, or for amendment or modification, of this Order at any time by motion, upon notice to all other parties, until the receivership is vacated or terminated, or this case is concluded.

It is further ORDERED that this Order shall evidence all authority of receiver necessary to take the actions provided for herein, and tenants at the properties shall be obligated to make all rental and related payments to receiver, and not to borrowers or their

property managers, upon and after having been presented with a copy of this Order and written direction of receiver to make such payments to it.

**IT IS SO ORDERED.**

Dated: February 24, 2009

_____
PHYLLIS J. HAMILTON
United States District Judge